## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**CATRINA ROBERSHAW**                                    **PLAINTIFF**

**V.**                          **NO. 3:20-cv-00295-ERE**

**COMMISSIONER OF**
**SOCIAL SECURITY ADMINISTRATION**                **DEFENDANT**

## <u>ORDER</u>

### I.   <u>Introduction</u>:

On February 6, 2019, Catrina Robershaw filed a Title XVI application for supplemental security income benefits. (Tr. at 9). In the application, she alleged disability beginning on February 1, 2019. *Id*. An administrative law judge (ALJ) denied Ms. Robershaw's application in a decision dated April 10, 2020. (Tr. at 19). The Appeals Council denied her request for review on September 1, 2020. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Robershaw has requested judicial review. For the reasons stated below, the Court[1] affirms the Commissioner's decision.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II.   <u>The Commissioner's Decision</u>:

At step one of the required five-step analysis, the ALJ found that Ms. Robershaw, who was 29 years old at the time of the hearing, had not engaged in substantial gainful activity since the application date of February 6, 2019.[2] (Tr. at 11, 29). At step two, the ALJ determined that Ms. Robershaw has the following severe impairments: depression, anxiety, posttraumatic stress disorder (PTSD), migraine headaches, lumbago, neuropathy, obesity, history of carpal tunnel syndrome, and history of plantar fasciitis and spur in 2018. *Id*.

After finding that Ms. Robershaw's impairments did not meet or equal a listed impairment (Tr. at 12-13), the ALJ determined that she had the residual functional capacity (RFC) to perform work at the sedentary exertional level, with exceptions: (1) she can no more than occasionally stoop, crouch, bend, kneel, crawl, and balance; (2) she is limited to no more than frequently fingering/handling in the dominant upper extremity; (3) she can perform work that is simple, routine, and repetitive with

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of  impairments) prevented the claimant from performing past relevant work23; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

For supplemental security income applications, the relevant time-period begins on the date that the application was filed. (Tr. at 9).

supervision that is simple, direct, and concrete; (4) she can maintain no more than frequent contact with coworkers and supervisors, and no more than occasional contact with the public; and (5) she functions at a reasoning level of three.[3] (Tr. at 14).

The ALJ next found that Ms. Robershaw had no past relevant work. (Tr. at 18). At step five, the ALJ relied upon the testimony of a Vocational Expert (VE) to find that, considering Ms. Robershaw's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform, such as table worker and document preparer. (Tr. at 19). Therefore, the ALJ found that Ms. Robershaw was not disabled. *Id*.

## III.   Discussion:

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable

---

[3] In the *Dictionary of Occupational Titles*, jobs are assigned a reasoning level based on the mental function required for each job. *See Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010).

mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B.   Ms. Robershaw's Arguments on Appeal

Ms. Robershaw contends that the evidence supporting the ALJ's decision is less than substantial. She argues that the ALJ did not properly evaluate the medical opinions and that the RFC did not fully incorporate her limitations. After reviewing

the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Robershaw suffered from a heel spur that improved after surgery, and from right-side carpal tunnel syndrome, which also improved after surgery. (Tr. at 32-35). She did not require aggressive post-surgical treatment for either condition. She also complained of a pinched nerve in her back and neuropathy in her legs, but she said that gabapentin helped her pain, and again, she did not require more than conservative treatment for those problems. (Tr. at 682).

Ms. Robershaw could do things like perform light chores, go grocery shopping, cook, care for her young daughter, watch TV, use Facebook, and use her phone for research and text messaging. (Tr. at 39-48, 243-250). Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

While Ms. Robershaw treated depression, anxiety, and PTSD with therapy and medication, she had large gaps in treatment; in fact, she was discharged from one mental health provider because she had not been to the clinic in over six months. (Tr. at 665-671). Therapy notes show that Ms. Robershaw's exacerbations were from situational stressors, and that generally her mental health improved over time. (Tr.

at 344-369).[4]  Also, she said medications helped to mitigate symptoms. (Tr. at 356). She did not require inpatient psychiatric hospitalization or ER treatment for mental health issues. And she was able to maintain relationships and attend to personal care, while also caring for her daughter. (Tr. at 38-47).

Ms. Robershaw also complained of debilitating migraines, but she said that Topamax had been somewhat helpful.[5]  (Tr. at 49-51). She admitted that she had not been to the ER for migraine treatment, and she said her headaches were less severe in July 2019. (Tr. at 562-563, 686-687).

Dr. Kevin Diamond, MD, Ms. Robershaw's primary care physician (PCP), filled out a medical source statement on October 29, 2019, which was on a short checkbox form. (Tr. at 660-663). With little elaboration and zero citation to medical evidence, Dr. Diamond opined that Ms. Robershaw could not even perform sedentary work.[6]  *Id*. Dr. Diamond said his restrictions covered a six-month period beginning October 29, 2019.[7]  *Id*. Dr. Diamond also wrote on two prescription order

---

[4] Situational stressors do not suggest an entitlement to disability benefits. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001).

[5] Ms. Robershaw started and stopped Topamax, rather than consistently taking the medication as prescribed. (Tr. at 51).

[6] *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (a conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration.

[7] The Court notes that there is a durational requirement for disability cases: the impairment must

slips that Ms. Robershaw could not work due to migraines and back pain.[8]  *Id.* These also lack any citation to any objective evidence or any narrative elaboration.

The ALJ found that Dr. Diamond's forms were minimally persuasive. Ms. Robershaw contends that this was error.

On January 28, 2017, the Social Security Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes: (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017). See *Phillips v. Saul*, No 1:19-cv-00034-BD *3-5, 2020 U.S. Dist. LEXIS 110370 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

---

last or be expected to last 12 months. (Tr. at 31); *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006).

[8] The conclusion that a claimant cannot work is an issue reserved for the Commissioner. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

The ALJ in this case listed the limitations assigned by Dr. Diamond, and found that the limitations were supported to some degree by his treatment notes, but were also largely based on Ms. Robershaw's subjective complaints. (Tr. at 17-18). The ALJ observed that Dr. Diamond did not perform medical imaging tests on Ms. Robershaw. *Id*. The ALJ concluded that Dr. Diamond's opinions were not consistent with the balance of the medical evidence (including the opinions of Disability Determination Services medical experts that Ms. Robershaw could perform a limited range of light work).[9] (Tr. at 17-18, 84-107). This reasoning, while not exhaustive, is sufficient to clear the bar for how ALJ's should evaluate medical opinions. The evidence in the record as a whole supports the ALJ's treatment of Dr. Diamond's opinion.

Ms. Robershaw also contends that the RFC should have specifically addressed limitations in concentration, persistence, or pace (using those words). The DDS psychiatric reviewing experts found moderate limitations in those areas, but the Eighth Circuit has held that such moderate limitations do not require verbatim references to concentration, persistence, or pace in the RFC. See *Chismarich v.*

---

[9] The ALJ essentially split the middle for the RFC: he assigned an RFC for sedentary work, although Dr. Diamond's opinion was for less than sedentary work and the DDS experts' opinions were for light work. His RFC determination showed that he considered all of the medical opinions.

*Berryhill*, 888 F.3d 978, 980-981 (8th Cir. 2018) (moderate difficulties in concentration, persistence, or pace are consistent with an RFC that finds a claimant capable of understanding, remembering, and carrying out simple instructions while performing non-detailed tasks; and minor inconsistencies in wording or phrasing in an ALJ's decision do not rise to the level of reversible error); *Williams v. SSA*, No. 2:18-cv-00174-BD *12-13 (E.D. Ark. Feb. 25, 2020) (the record as a whole demonstrated claimant could perform a variety of activities requiring concentration, persistence, or pace, so the RFC for work with few variables and little judgment, as well as simple and direct supervision, was sufficient).

In an Eighth Circuit case where the claimant had clear mental deficiencies, and the DDS medical experts adjudged moderate limitations in concentration, persistence, or pace, a corresponding RFC limitation to only "simple work" was imprecise and reversal was required. *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996). But this case is different. First, the ALJ delineated several limitations in the RFC, with respect to supervision, work type, and interpersonal contact. (Tr. at 14). Unlike in *Newton,* the RFC did not say only "simple work." Second, Ms. Robershaw's ability to perform activities requiring concentration, persistence, or pace obviates the need for special RFC restrictions in those areas. The balance of the evidence supports the ALJ's RFC determination.

9

IV.   **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly analyzed the medical opinions and the RFC fully incorporated Ms. Robershaw's limitations. The finding that Ms. Robershaw was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

ORDERED this 16th day of September, 2021.

_____
UNITED STATES MAGISTRATE JUDGE